Venkat Balasubramani, OSB #180446
venkat@focallaw.com
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice Pending*)
kim@focallaw.com
**FOCAL PLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| CPANEL, LLC, a Texas limited liability company,<br><br>                    Plaintiff,<br>v.<br><br>DOES 1-10, inclusive,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR COPYRIGHT AND TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff cPanel, LLC, for its Complaint against Defendants Does 1 through 10, and alleges as follows:

## INTRODUCTION

1. cPanel is engaged in the business of developing, marketing, distributing, selling, and licensing hosting automation software.

2. cPanel brings this lawsuit to combat a rogue online retailer who sells unauthorized (illicit) licenses for cPanel's hosting automation management software and in the process uses trademark and copyrighted material owned by cPanel without authorization from cPanel. The illicit licenses are offered for sale and sold on two websites (the "Licenseman Sites"), one of which refers potential purchasers to the other, accessible via the domain names license-cpanel.net, and licenseman.net (the "Licenseman Domains").

3. The infringer (or infringers) uses a proxy privacy service, Private by Design LLC, to register the Licenseman Domains. Private by Design is listed as the registrant for both Licenseman Domains.

4. cPanel has been and continues to be irreparably damaged by the infringement of its intellectual property and is entitled to monetary damages and injunctive relief for the trademark and copyright violations alleged herein.

## PARTIES

5. cPanel is a limited liability company formed under the laws of the State of Texas, with its principal place of business located at 2550 North Loop W., Suite 4006, Houston, Texas.

6. Upon information and belief, Does 1 through 10 (collectively, "Doe Defendants") are the individuals and/or entities who are the true owner(s) of the Licenseman Domains and who are acting in concert to operate the Licenseman Sites. Despite cPanel's efforts, to date it has

been unable to ascertain the Doe Defendants' true identities and/or contact information, due to their use of Private by Design privacy services. For this reason, cPanel sues the infringing parties as Does 1 through 10.

7. Upon information and belief, the Doe Defendants do not reside in the United States. cPanel reserves the right to amend this Complaint to allege the Does' true identities when they are determined and to otherwise add allegations reflecting the scope and capacity of each such individual's and/or entity's infringing activity.

8. Both Licenseman Domains are registered in the name of Private by Design although the Doe Defendants are believed to be the beneficial owners.

9. Both Licenseman Domains are registered through Porkbun, LLC, a registrar believed to be located in Sherwood, Oregon. On information and belief (and based on statements published online), Porkbun is believed to be closely affiliated with Private by Design.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) and (b) and 15 U.S.C. § 1121(a) because it alleges violations of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

11. This Court has personal jurisdiction over the Doe Defendants pursuant to FED. R. CIV. P. 4(k). The claims asserted by cPanel arise under federal law. On information and belief, the Doe Defendants are not subject to the courts of general jurisdiction in any state. The assertion of personal jurisdiction over the Doe Defendants is reasonable in light of the contacts between the Doe Defendants and the United States, as described herein.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, a substantial part of the events or omissions giving rise to the claims,

including, but not limited to, registration of the Licenseman Domains, occurred in the District of Oregon where the registrar, Porkbun is believed to be located. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(c)(3) because the Doe Defendants are, upon information and belief, not residents of the United States.

## FACTUAL ALLEGATIONS

### cPanel Background

13. cPanel markets, distributes, sells, and licenses hosting automation software which provides a graphical interface and automated tools that facilitate the management and hosting of websites ("cPanel Software"). The cPanel Software is marketed, distributed, sold, resold, and licensed to hosting providers, developers, and small and medium businesses worldwide.

14. The CPANEL mark associated with the cPanel Software (described below) is one of the most recognizable brands in the hosting industry.

15. cPanel has spent substantial time, money, and efforts in building and developing customer recognition, awareness, and goodwill in the cPanel Software offered under its trademarks. cPanel's success is due in part to cPanel's high-quality products and technical support services. cPanel also owes a substantial amount of its success to its users, and word-of-mouth buzz that its users have generated. Since the cPanel Software was first offered for sale in the mid-90s, cPanel has generated millions of dollars in sales worldwide.

### cPanel's Protection of Its Registered Trademark and Copyrights

16. cPanel has invested significant resources in its name and related brand – CPANEL. cPanel is the exclusive owner of several trademarks and U.S. registrations for those marks. The trademark relevant to this action, CPANEL (the "cPanel Trademark"), including descriptions of the goods and services with which the mark is used, is set forth below:

| Mark | U.S. Reg No. | Class | Description of Goods/Services |
|---|---|---|---|
| CPANEL | 3058679 | IC 009 | Computer software for facilitating the management and configuration of Internet web servers.<br>FIRST USE: January 6, 1998.<br>FIRST USE IN COMMERCE: March 27, 1998. |

17. cPanel is also the exclusive owner of copyrights in two versions of its software which are registered with the United States Copyright Office ("cPanel Copyrights"). One registration (TX 9-136-742) covers version 106 of the code underlying its core software program. The other registration (TX 9-136-738) covers version 11.25 of the code underlying the program. Copies of the certificates of registration for the cPanel Copyrights are attached hereto as **Exhibit A**.

18. cPanel devotes significant resources toward protecting the value of the cPanel Trademark, cPanel Copyrights, and the company's reputation. cPanel is able to ensure users' satisfaction with the cPanel Software, and maintain its excellent reputation, by controlling the distribution, marketing and sale of the cPanel Software.

19. To install and use the cPanel Software on anything other than a limited, trial basis, users must purchase a license ("cPanel License"). The cPanel License allows cPanel to verify that a customer is using a valid and authorized version of the cPanel Software.

20. Users may purchase the cPanel License directly via cPanel's website, cpanel.net. Pricing plans range from $15.99 per month to $53.99 per month.

21. cPanel also maintains a system of authorized third-party distributors and partners through which it distributes cPanel Licenses and subscriptions to cPanel Software.

22. cPanel exercises strict controls over its authorized third-party partners. cPanel has

the right to review and approve any information disseminated by the authorized third-party distributors and partners regarding cPanel, the cPanel Software, support, and other cPanel-related information, including but not limited to such information on websites created and maintained by the authorized third-party distributors and partners and the use of the cPanel Trademark.

### The Doe Defendants' Unlawful Conduct

23. In light of cPanel's success, as well as the reputation it has gained, cPanel and its cPanel Software have become targets for unscrupulous individuals and entities, who want to capitalize on the goodwill and reputation cPanel has amassed in the cPanel Copyrights, the cPanel Trademark, and the cPanel Software.

24. To prevent illegal copying of the cPanel Software, cPanel relies on security mechanisms, which include license verification technology.

25. The text of the Licenseman Site states, in a URL that offers an explanation of the history of the site (accessible via https://licenseman.net/how-it-works/), that:

> "after a while, we realized that many users like us are not able to pay and use the licenses of some companies completely and it is not profitable for them. So *we decided to launch a complete system to enable the company's licenses to be shared with the public at a lower price*. For example, we buy an original cPanel license and use that tunnel to use the license for three servers."

26. Without authorization from cPanel, upon information and belief, the Doe Defendants have modified the cPanel Software (thereby effectively creating unauthorized derivative works of the cPanel Software) by replacing or modifying certain binaries[1] in the cPanel Software (the "Licenseman Modifications") such that requests made to cPanel's licensing and technical support systems are rerouted to servers owned or controlled by the Doe Defendants. The binaries also modify the cPanel Software so that trial banners (which indicate to

---

[1] When a computer program is compiled from its human readable format to code that can be read by a computer, a binary is a result of that. Binary code is a set of computer readable numbers.

COMPLAINT 5

end users that a system running cPanel Software is licensed for trial use only) are hidden. Similarly, additional modifications result in the automatic uninstallation of the software as modified by Licenseman (and cPanel Software) if cPanel's technical support staff logs in to a server on which the modified software is installed. When cPanel's code is compiled, it is also encrypted. The binary files that the Doe Defendants use to conduct their unlawful actions appear to be "wrapped" around binary files in the cPanel Software that conduct license updates and license verifications. During license verification, these "wrapped binaries" are altered to accept licenses that were issued to other cPanel systems. This new direction helps avoid cPanel's license verification mechanisms. The modified, derivative versions of the cPanel Software (i.e., versions that incorporate the Licenseman Modifications) allow for multiple unauthorized users to utilize the same cPanel License.

27.     The Doe Defendants make no effort to conceal their actions, going so far as to explain on the licenseman.net site that they take certain steps to allow multiple users to take advantage of the same cPanel License:



28.     cPanel provides technical support services related to the cPanel Software, via email, telephone, the cPanel website and other means. End users often contact cPanel with questions about the cPanel Software. cPanel's customer service staff work with users to help troubleshoot issues. In the process of troubleshooting these issues, cPanel has discovered that numerous users were using illicit licenses purchased via the Licenseman Sites.

COMPLAINT                                               6

29.     cPanel also uses an internal investigation team that analyzes information gathered from unauthorized use of the cPanel Software to create profiles of potential fraud cases. These profiles may contain information gleaned from the illicit use of cPanel Software to better target mechanisms that may indicate fraud.

30.     cPanel attempted to track down the persons or entities behind these sites – an individual or entity doing business as "Licenseman" – but has been frustrated in its efforts by the sellers' successful efforts in conducting business anonymously. Upon information and belief, the Doe Defendants have periodically changed the domains they use to advertise the illicit cPanel licenses and have previously operated under different names to avoid detection. The Doe Defendants have changed some of the code used to license the cPanel Software in a way that limits the number of times the cPanel Software "calls back" to cPanel's own license server, which makes the Doe Defendants' unlawful conduct more difficult to investigate. The Doe Defendants also monitor IP addresses of potential purchasers of the illicit cPanel licenses and refuse to sell the licenses if the purchaser originates from an IP address assigned to cPanel. In addition, the Doe Defendants are able to detect when a cPanel support representative logs in to the server, and disables those licenses to avoid detection by cPanel.

31.     The homepages for the Licenseman Sites, accessed via the Licenseman Domains, prominently feature the cPanel Trademark to market the illicit cPanel Licenses they offer for sale. The Licenseman Sites indicate prices in U.S. dollars and accept payment via PayPal. A screenshot of the Licenseman Sites is below, showing the infringing use of the cPanel Trademark to advertise the sale of the illicit cPanel Licenses:



32.     Both of the Licenseman Sites use the name "Licenseman." A user visiting the website linked to the Licenseman Domain <license-cpanel.net> who clicks on "Buy cPanel License Now!" is directed to my.licenseman.net, and the two websites list the same contact information via the Telegram instant messaging service (a service known in part for its privacy and use of strong encryption) – "@licenseman_net".

COMPLAINT                           8

From licenseman.net:



From license-cpanel.net:



33.     Upon information and belief, the same person or entity (doing business as "Licenseman") operates the Licenseman Sites made available via both Licenseman Domains.

34.     "Licenseman" or the individuals and/or entities behind the Licenseman Sites are not authorized by cPanel or by any authorized agents or licensees to manufacture, advertise, distribute, offer for sale or sell the cPanel Software or cPanel Licenses, or to use the cPanel Trademark or cPanel Copyrights.

35. The Doe Defendants' unlawful conduct has and will continue to injure cPanel's reputation and brand, not only because of the consumer confusion caused by sale of the illicit licenses and unauthorized use of the cPanel Trademark and cPanel Copyrights, but also because of the impact on users who purchase the illicit licenses.

36. To address user issues associated with the illicit licenses requires a user's time and expense. Often, a user must perform a fresh installation of the operating system and re-install the cPanel Software using a valid and genuine cPanel License and restore account backups, or, migrate to a known clean server that has not been compromised by the illicit license.

37. If a user who has obtained an illicit license does not contact cPanel for support and/or does not expend resources to address the problems created by the illicit licenses, the user is left adrift without meaningful support. This further exacerbates the harm to cPanel's goodwill.

## FIRST CAUSE OF ACTION

**(Direct Copyright Infringement – 17 U.S.C. § 101 *et seq.*)**

38. cPanel realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

39. The cPanel Software constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.

40. cPanel is the owner of, or has exclusive rights in, the cPanel Copyrights.

41. The Doe Defendants have modified and/or created derivative works of the cPanel Software as described herein, without the consent of cPanel.

42. The foregoing activities constitute direct infringement of the exclusive rights of cPanel in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

43. The Doe Defendants' actions were and are intentional, willful, wanton, and

performed in disregard of cPanel's rights.

44. cPanel is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

45. cPanel is entitled to its actual damages and Defendants' profits, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).

46. Alternatively, cPanel is entitled to the maximum statutory damages of $150,000 per infringed work for willful infringement, pursuant to 17 U.S.C. § 504(c).

47. cPanel is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## SECOND CAUSE OF ACTION

### (Trafficking in Circumvention Devices, 17 U.S.C. § 1201(a)(2))

48. cPanel realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 37 above as if fully set forth herein.

49. The cPanel Software, including but not limited to the underlying source code, are copyrighted works under the laws of the United States.

50. As described herein, cPanel has designed and implemented technological measures into the cPanel Software that effectively control access to the cPanel Software.

51. The Doe Defendants' illicit licenses along with the Licenseman Modifications are comprised of or contain technologies, products, services, devices, components, or parts thereof that are primarily designed or produced for the purpose of circumventing cPanel's technological measures that effectively control access to the cPanel Software, copyrighted works protected under the Copyright Act.

52. The Doe Defendants' illicit licenses along with the Licenseman Modifications have no commercially significant purpose or use other than to circumvent cPanel's technological

COMPLAINT                                    11

measures that effectively control access to the cPanel Software, copyrighted works protected under the Copyright Act.

53. The Doe Defendants, and/or other persons or entities acting in concert with the Doe Defendants with their knowledge, market the illicit licenses along with the Licenseman Modifications for use in circumventing cPanel's technological measures that effectively control access to the cPanel Software, copyrighted works protected under the Copyright Act.

54. As a result of the foregoing, the Doe Defendants are importing, offering to the public, providing, or otherwise trafficking in a technology, product, service, device, component, or part thereof that violates 17 U.S.C. § 1201(a)(2).

55. Each such import, offering to the public, providing, or otherwise trafficking in circumvention technology constitutes a violation of 17 U.S.C. § 1201(a)(2).

56. The Doe Defendants' actions are willful, intentional, purposeful, and in disregard of the rights of cPanel.

57. The Doe Defendants' actions have caused damage to cPanel and have unjustly enriched the Doe Defendants, in amounts to be proven at trial.

58. cPanel is entitled to the maximum statutory damages in the amount of $2,500 per violation pursuant to 17 U.S.C. § 1203(c)(3)(A). Alternatively, cPanel is entitled to its actual damages and the Doe Defendants' profits attributable to their violations of 17 U.S.C. § 1201 pursuant to 17 U.S.C. § 1203(c)(1), (2).

59. cPanel is entitled to injunctive relief to enjoin the Doe Defendants' ongoing unlawful conduct pursuant to 17 U.S.C. § 1203(b).

60. cPanel is further entitled to its attorneys' fees and costs of this action pursuant to 17 U.S.C. § 1203(b).

## THIRD CAUSE OF ACTION

### (Trademark Infringement – 15 U.S.C. § 1114)

61.	cPanel realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 37 above as if fully set forth herein.

62.	cPanel is the exclusive owner of all right and title to the cPanel Trademark.

63.	cPanel, as the owner of all rights, title, and interest in and to the cPanel Trademark, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

64.	Without cPanel's authorization or consent and with knowledge of cPanel's well-known and prior rights in the cPanel Trademark, the Doe Defendants intentionally used the cPanel Trademark on the Licenseman Sites to market, distribute, offer for sale and/or sell the cPanel Software to customers of the Licenseman Sites.

65.	The Doe Defendants' willful, intentional, and unauthorized use of the cPanel Trademark is likely to cause, and is causing, confusion, mistake, and deception as to the source, the origin, and the quality of the illicit licenses of the cPanel Software and the related services among the general public.

66.	The Doe Defendants' use of the cPanel Trademark as alleged herein constitutes trademark infringement under 15 U.S.C. § 1114.

67.	The Doe Defendants' unlawful conduct has caused monetary loss and irreparable injury and damage to cPanel, its business, its reputation, and its valuable rights in and to the cPanel Trademark and the goodwill associated therewith, in an amount as yet unknown, for which cPanel has no adequate remedy at law. If the Doe Defendants' actions are not enjoined, cPanel will continue to suffer irreparable harm to its reputation and the goodwill of the cPanel

Trademark.

68. cPanel is therefore entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1116 restraining and enjoining the Doe Defendants, and their agents, employees, and all persons acting in concert with them or on their behalf, from using in commerce the cPanel Trademark or any colorable imitation thereof.

69. The Doe Defendants' conduct and continuation of such conduct is knowing, willful and deliberate, and in conscious disregard of cPanel's rights with respect to the cPanel Trademark, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) and entitling cPanel to an award of its reasonable attorneys' fees and costs.

70. cPanel is also entitled to the relief provided in 15 U.S.C. § 1117(a), including but not limited to, actual damages (which should be trebled), the Doe Defendants' profits, and the costs of this action in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION

**(False Designation of Origin and Unfair Competition – 15 U.S.C. § 1125(a))**

71. cPanel realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 37 above as if fully set forth herein.

72. As a result of its extensive and continuous use in commerce of the cPanel Trademark, cPanel has established significant consumer recognition of, and rights to, the cPanel Trademark.

73. The Doe Defendants' promotion, marketing, offering for sale, and sale of the illicit licenses and other services has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with cPanel or the origin, sponsorship, or approval of the illicit licenses for the cPanel Software by

cPanel.

74. The Doe Defendants' unlawful conduct has caused monetary loss and irreparable injury and damage to cPanel, its business, its reputation, and its valuable rights in and to the cPanel Trademark and the goodwill associated therewith, in an amount as yet unknown, for which cPanel has no adequate remedy at law. If the Doe Defendants' actions are not enjoined, cPanel will continue to suffer irreparable harm to its reputation and the goodwill of the cPanel Trademark.

75. cPanel is therefore entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1116 restraining and enjoining the Doe Defendants, and their agents, employees, and all persons acting in concert with them or on their behalf, from using in commerce the cPanel Trademark or any colorable imitation thereof

76. cPanel is entitled to recover the Doe Defendants' profits, cPanel's actual damages, and the cost of this action.

77. The Doe Defendants' conduct and continuation of such conduct is knowing, willful and deliberate, and in conscious disregard of cPanel's rights with respect to the cPanel Trademark, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a) and entitling cPanel to an award of its reasonable attorneys' fees and costs.

78. cPanel is also entitled to the relief provided in 15 U.S.C. § 1117(a), including but not limited to, actual damages (which should be trebled), Defendants' profits, and the costs of this action in amounts to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Cybersquatting – 15 U.S.C. § 1125(d))

79. cPanel realleges and incorporates by reference all of the allegations set forth in

paragraphs 1 through 37 above as if fully set forth herein.

80. The cPanel Trademark is distinctive and was federally registered at the United States Patent and Trademark Office at the time the Doe Defendants registered, trafficked in, or used the Licenseman Domain license-cpanel.net.

81. The Licenseman Domain license-cpanel.net is confusingly similar to the cPanel Trademark.

82. The Doe Defendants registered, trafficked in, or used the Licenseman Domain license-cpanel.net with a bad faith intent to profit from the cPanel Trademark.

83. The Doe Defendants do not have any trademark or other intellectual property rights in the Licenseman Domain license-cpanel.net.

84. The Doe Defendants registered, trafficked in, or used the Licenseman Domain license-cpanel.net to divert consumers from cPanel's legitimate website and other retail outlets for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of their website.

85. The Doe Defendants' registration, use, and/or trafficking in the Licenseman Domain license-cpanel.net constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling cPanel to relief.

86. cPanel's remedy at law is not adequate to compensate it for the injuries the Doe Defendants have inflicted on cPanel. Accordingly, cPanel is entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116, and an order requiring the Licenseman Domain license-cpanel.net to be transferred to cPanel.

87. cPanel is entitled to recover the Doe Defendants' and profits, cPanel's actual damages, and the costs of this action. Instead of actual damages and profits, cPanel may

alternatively elect to receive an award of statutory damages under 15 U.S.C. § 1117 in an amount of $100,000.

## PRAYER FOR RELIEF

WHEREFORE, cPanel respectfully requests that judgment be entered in its favor on each of the claims alleged herein, and that it be awarded relief that includes, but is not limited to, an order:

1. Preliminarily and permanently enjoining Doe Defendants and each of their affiliates, officers, principals, agents, servants, employees, and any other persons who are in active concert or participation with them from:

   a. Using the cPanel Trademark in connection with the production, publication, creation, display, distribution, sale, offering for sale, or advertising of any products;

   b. Using the cPanel Copyrights in connection with the production, publication, creation, display, distribution, sale, or offering for sale of any products;

   c. Engaging in any action to pass off non-genuine cPanel products as genuine cPanel products;

   d. Engaging in further actions to interfere with cPanel's rights in its trademarks or copyrights or in damaging cPanel's goodwill or reputation;

2. Requiring Doe Defendants to deliver to cPanel all copies of materials that have be made or used in violation of cPanel's rights as described herein;

3. Requiring the Doe Defendants to provide cPanel with an accounting of all sales of the illicit licenses for the cPanel Software;

4. Awarding cPanel its actual damages and the Doe Defendants' profits attributable to the infringement of the cPanel Copyrights pursuant to 17 U.S.C. § 504(b), or, alternatively,

maximum statutory damages of $150,000 per infringed work for willful copyright infringement pursuant to 17 U.S.C. § 504(c);

5. Awarding cPanel its actual damages—which should be trebled—and the Doe Defendants' profits for the Doe Defendants' infringement of the cPanel Trademark and false designation of origin and unfair competition under the Lanham Act, pursuant to 15 U.S.C. § 1117;

6. Awarding cPanel its reasonable attorneys' fees and costs, as permitted by law;

7. Awarding prejudgment interest as permitted by law; and

8. Awarding such other and further relief as the Court deems equitable, just, and proper.

Dated this 21st day of December, 2022.   Respectfully submitted,

FOCAL PLLC

By: s/*Venkat Balasubramani*
Venkat Balasubramani, OSB #180446
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice Pending*)
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827
venkat@focallaw.com
kim@focallaw.com

*Attorneys for Plaintiff*